William **HALLMAN** and Jose Alberto Lozano, Plaintiffs–Appellants,

v.

**IMMIGRATION AND NATURALIZATION SERVICE, et al.,** Defendants–Appellees.

No. 88–1964
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

July 3, 1989.

John Wheat Gibson, Joe K. Crews, Dallas, Tex., for plaintiffs-appellants.

Karen L. Fletcher, Mark C. Walters, Asst. Director, Office of Immigration Litigation, Civ. Div., Dept. of Justice, Washington, D.C., for defendants-appellees.

Before GEE, WILLIAMS, and HIGGINBOTHAM, Circuit Judges.

PER CURIAM:

Jose Lozano and his employer, William Hallman, seek attorneys fees from the Immigration and Naturalization Service under the Equal Access to Justice Act, 28 U.S.C. § 2412 *et seq.* The district court denied their application for fees on two grounds: that Hallman and Lozano were not prevailing parties, and that the Service's position

was "substantially justified." We agree that the Service's position was substantially justified, and so affirm the district court's decision without reaching the question of prevailing party status.

## I

Jose Lozano submitted a petition for asylum to the Immigration and Naturalization Service (INS), contending that he feared he would be persecuted if forced to return to his native El Salvador. An alien who files a "non-frivolous application for asylum" is entitled to employment authorization while the asylum application is pending. *See* 8 C.F.R. § 274a.12(c)(8). The INS found Lozano's application frivolous, relying upon standards set out in a 1987 memorandum authored by INS Associate Commissioner Richard Norton.

Lozano then filed suit in federal district court for the Northern District of Texas, seeking a preliminary injunction and a temporary restraining order. The INS contended that Lozano had introduced new evidence before the court which the INS had not yet considered, and sought a remand. The remand was granted, and after considering the new evidence, the INS decided that Lozano's application had become non-frivolous. The suit was dismissed as moot, Lozano having received the relief he was seeking.

Lozano and Hallman sought $12,000 in attorneys fees under the Equal Access to Justice Act (EAJA). The district court denied them fees on two grounds. First, the district court found that Lozano and Hallman could have received the relief they requested without judicial process had they submitted the new evidence to the INS with Lozano's original application. For this reason the district court concluded that Lozano and Hallman were not prevailing parties for purposes of the EAJA. *See Iranian Students Ass'n v. Sawyer,* 639 F.2d 1160, 1163–64 (5th Cir.1981) (to have prevailing party status for purposes of attorneys fees statute, party must show a causal connection between the lawsuit and relief received) (42 U.S.C. § 1988 case). Second, the district court found that the

INS's position was "substantially justified," so that no attorneys fees award could be imposed. 28 U.S.C. § 2412(d)(1)(A).

The parties dispute whether the district court applied the correct standard for determining whether the litigation "caused" a settlement, and also dispute the proper interpretation of the Norton memorandum. We find it unnecessary to resolve either of these issues, for we find that the INS's position was "substantially justified" under the law, regardless of whether the agency's interpretation of the Norton memorandum correctly specifies the meaning of "frivolous" for purposes of 8 C.F.R. § 274a.12(c)(8).

## II

■ Lozano's original application sought asylum largely on the ground that his village in El Salvador had been the target of a government bombing raid, and that his village had been selected for the attack because the government suspected that the village's inhabitants were sympathetic to the anti-government guerillas. The INS found this application frivolous. The district court, to deny attorneys fees, need not have found that the application was indeed frivolous; the court need only have determined that the government was "substantially justified" in thinking it so. *Pierce v. Underwood,* —— U.S. ——, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490 (1988). On review, we apply an abuse of discretion standard. *Id.* 108 S.Ct. at 2546–49. Both the underlying government conduct giving rise to the lawsuit and the government's conduct of the lawsuit are to be assessed in determining whether the government conduct was "substantially justified." *See* 28 U.S.C. § 2412(d)(1)(B). *See also S.E.C. v. Fox,* 855 F.2d 247, 250–52 (5th Cir.1988).

We have noted that Congress, when it passed the statute governing asylum applications, "did not intend to confer eligibility for asylum on all persons who suffer harm from civil disturbances—conditions that necessarily have political implications." *Campos–Guardado v. INS,* 809 F.2d 285, 290 (5th Cir.1987), *cert. denied,* 484 U.S.

826, 108 S.Ct. 92, 98 L.Ed.2d 53 (1987). We went on to say that when an alien seeks refuge from political persecution, the "issue reduces to whether the political implications underlying an alien's fear of harm rise to the level of 'political opinion' within the meaning of the statute or whether those conditions constitute the type of civil strife outside the intended reach of the statute." *Id.*

 Here the INS deemed Lozano's petition frivolous because, after in-depth questioning by the INS, he had not been able to specify any of five recognized grounds for persecution—race, religion, nationality, political opinion, or membership in a social group—and because Lozano had not shown unusual circumstances that would suggest he was in danger of persecution despite his inability to identify a basis for it. The INS found no evidence to suggest anything other than that the bombing raid upon Lozano's village was a battlefield tactic designed to eliminate a source of security and support available to guerillas in a war zone. In other words, the INS saw no evidence to suggest that the raid was conducted to eliminate particular persons viewed unfavorably by the government. The INS called the bombing "tragic," but concluded it did not provide any non-frivolous ground for asylum. Because asylum is not available to every victim of civil strife, but is restricted to those persecuted for particular reasons, we find no error in the district court's conclusion that the INS was substantially justified in regarding Lozano's original application as frivolous.

In the district court, Lozano introduced testimony that soldiers had entered the village after the bombing raid in an effort to wipe out all survivors. The INS contended that this was new evidence it had not heard before, and the district court so found. We find no basis for Lozano's contention on appeal that the record lacked any evidence to support the INS's characterization of this testimony as new. The district court's finding with respect to newness of the evidence is factual, and we do not believe it clearly erroneous.

On remand, the INS determined that the new evidence established "unusual circumstances," even if it did not identify any particular statutory basis that would make Lozano's claim of persecution cognizable. The INS apparently concluded that the follow-up raid indicated that the government might have a persecutorial animus against the particular individuals within the village. Again, the INS's change in position finds support in the reasoning of *Campos–Guardado*, and, again, we find no error in the district court's conclusion that the INS's changes in response to the new evidence were "substantially justified."

### III

We conclude that the district court did not abuse its discretion in determining that the government's position was "substantially justified," and so that no attorneys fees should be awarded. The decision of the district court is therefore in all respects.

AFFIRMED.